# IN THE COURT OF APPEALS OF IOWA

No. 20-0218
Filed January 21, 2021

IN RE THE MARRIAGE OF JUSTIN PAUL SULZNER
AND TERRI LEIGH SULZNER

Upon the Petition of
**JUSTIN PAUL SULZNER,**
        Petitioner-Appellant,

**And Concerning**
**TERRI LEIGH SULZNER,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Fayette County, Richard D. Stochl,

Judge.

A former husband appeals the decree dissolving his marriage and the order

denying his motions for contempt.  **AFFIRMED.**

Justin P. Sulzner, Cedar Rapids, self-represented appellant.

Benjamin M. Lange of Swisher & Cohrt, P.L.C., Independence, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Justin and Terri Sulzner ended their twenty-nine-year marriage by a stipulated decree in January 2020.  The stipulation governed the distribution of all marital assets.  After the divorce, Justin asked the district court to hold Terri in contempt and to impose sanctions against her for failing to deliver the assets required by the decree.  The court denied those requests.

Representing himself on appeal, Justin raises three issues.[1]  First, he contends the district court erred in failing to timely rule on his motions to compel production of financial documents during discovery.  Second, he claims the decree is unenforceable because he stipulated to the terms "under duress and extremely distressing circumstances."  Third, he argues the court erred in refusing to hold Terri in contempt and denying his request for sanctions.  Both parties ask for appellate attorney fees.

Because Justin did not preserve error on the first two issues, we do not reach the merits of those claims.  On his third claim, we find no abuse of discretion in the court's ruling on contempt and sanctions.  Thus, we affirm the decree and order denying his request for sanctions.  We decline to award either party attorney fees on appeal.

## I.  Facts and Prior Proceedings

Justin and Terri married in 1990 and had three children together.  The couple lived in their home in Fayette for seventeen years.  During their marriage, Justin and Terri established a small business together—Sunshine Kids Services,

---

[1] Justin asked for the withdrawal of his court-appointed counsel after the divorce proceedings ended based on unresolvable conflicts.

Inc. For the past three years, the corporation was their only source of earned income. The couple also owned a joint money market fund, several bank accounts, and an inventory of silver coins and other precious metals.

A few years back, Justin was diagnosed with bipolar disorder with mania. The couple separated in August 2019 after Justin was hospitalized for several weeks because of his mental-health condition. Following his discharge from the hospital, Justin moved out of the marital home and stayed at the Salvation Army Men's Shelter throughout the proceedings.

In mid-August, Terri petitioned for an involuntary conservatorship over Justin to manage his financial affairs. She alleged Justin's mental illness rendered him unable to make sound financial decisions. The district court appointed Terri as his temporary conservator. Justin moved to dissolve the conservatorship that October, alleging Terri was using her conservatorship power to manipulate his assets after learning about his intent to divorce her.

While the conservatorship matter was pending, Justin filed for divorce. On October 29, the court issued a pretrial discovery order in the divorce proceedings, requiring the parties to produce, within sixty days, a list of documents, including financial records.[2] Just two weeks later, Justin moved to compel "an immediate release" of monthly statements "of all bank accounts that were jointly controlled and also solely controlled by [Terri]." On December 1, the court responded: "No action is taken on the filing." Justin again moved to compel the production of

---

[2] The list of documents included pay stubs, federal and state tax returns, statements from retirement or savings plans, bank account statements, and credit card statements.

documents on December 21—this time for credit card statements. The court never addressed that motion.

In early January 2020, the court held a combined hearing for both the conservatorship and divorce proceedings. At the hearing, Justin's attorney informed the court that they reached an agreement with opposing counsel "on virtually all terms" of the divorce. Terri's attorney, who drafted the stipulation, read the major provisions into the record. After confirming that Justin understood the agreement, the court dismissed the conservatorship, finding Justin competent to contract. Justin signed the agreement.

The January 8 decree incorporated the stipulation, which awarded Justin over $46,000 in precious metals, a portion of business assets, $18,000 from the money market fund, all his personal cash and bank account funds, and a share of the joint bank account. Later that month, Justin complained he did not receive the full value of his precious metals or the correct amount of cash funds. He filed a motion on January 22, requesting "immediate delivery" of all the assets, as well as "pro se attorney fees." He filed another motion on January 27 repeating the previous request and also requesting sanctions.

The court denied the motions in a three-sentence order: "Justin Sulzner has again filed pro se pleadings. His request for sanctions is denied . . . . His application for rule to show cause is not verified and therefore denied."

From that order and the stipulated decree, Justin now appeals.[3]

---

[3] In June 2020, the supreme court issued an order granting Justin an appeal of right from the district court's January 8 dissolution decree and the February 4 order denying Justin's motions for contempt and sanctions. We will not consider any of the filings after the February 4 order in our analysis.

## II. Analysis

We review dissolution-of-marriage cases de novo.  *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).  Although we examine the entire record, we adjudicate anew only the issues that the parties properly preserved.  *Id.*; *In re Marriage of Briddle*, 756 N.W.2d 35, 39 (Iowa 2008).

### A. Production of Financial Records

Justin faults the district court for not addressing his motions to compel the production of documents "in a timely manner."  He claims the lack of discovery allowed Terri "to gain financial leverage over the marital finances and home" just before the dissolution hearing.

Terri challenges error preservation, contending "any issues relating to discovery were not raised and decided by the trial court."  She argues because Justin's motions to compel were premature—in other words, filed before the allowable discovery period ended—the court's inaction was proper.

We agree Justin failed to preserve error on this issue.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  The district court did not rule on the motions to compel.  To be sure, the court responded to the first motion: "No action is taken on the filing."[4]  But Justin fails to point out where in the record he

---

[4] The pretrial discovery order was entered on October 29, 2019, and gave the parties sixty days—or until December 29—to comply with the order.  Because Justin moved to compel the production of documents pursuant to the discovery order on November 13 and December 21, the court did not rule on the premature motions.

challenged that decision. *See* Iowa R. App. P. 6.903(2)(g)(1) (requiring appellant's brief to contain "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided"). Plus, he never requested a ruling on either motion before, or even after the discovery deadline passed on December 29, 2019. Under these circumstances, he waived the issue. *See Meier*, 641 N.W.2d at 540–41. We cannot permit "substantial departures" from appellate procedures simply because a party represents himself on appeal. *Polk Cty. v. Davis*, 525 N.W.2d 434, 435 (Iowa Ct. App. 1994). Thus we do not reach the merits of his discovery claim.

## B. Fairness of Stipulation

Also for the first time on appeal, Justin claims the binding stipulation was unfair because he signed the agreement "under severe pressure" and "duress" by the district court. In the same argument section, Justin criticizes the conduct of both the judge and the attorneys at the January hearing, claiming they "lacked serious moral and professional integrity."

As Terri points out, Justin's claim is unclear. His failure to cite legal authority adds to the murkiness. As does the lack of analysis to back his sweeping assertion that he was "under duress and intimidation." Given these omissions, we can't engage in an "intelligent review" of the issues. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996). In other words, this claim falls outside the scope of our review. *See id.* at 870 (noting de novo review encompasses "only the errors specifically assigned . . . and adequately supported by analysis and authority"). Justin also failed to preserve error on this issue because he did not raise a claim of duress before the district court. *See Meier*, 641 N.W.2d at 537.

### C. Contempt and Sanctions

Finally, Justin argues the district court erred in denying his post-dissolution motions requesting sanctions and a finding of contempt against Terri.[5]  In doing so, he seeks to enforce the decree.  In defending the court's ruling, Terri contends the court properly exercised its discretion in refusing the contempt finding because Justin did not file a requisite affidavit.

We review the denial of sanctions for an abuse of discretion.  *Bd. of Water Works Trs. v. City of Des Moines*, 469 N.W.2d 700, 703 (Iowa 1991).  We apply that same standard in reviewing the court's refusal to hold Terri in contempt.  *See In re Marriage of Swan*, 526 N.W.2d 329, 327 (Iowa 1995) (noting contempt determinations under Iowa Code chapter 598 can be reversed only if the court "grossly abused" its discretion).  Section 598.23(1) (2019) provides that a person who "willfully disobeys" a final decree "*may* be cited and punished" for contempt.  Iowa Code § 598.23(1) (emphasis added).  Given the discretionary language, "a trial court is not required to hold a party in contempt even though the elements of contempt may exist."  *Swan*, 526 N.W.2d at 327.

The district court denied Justin's motion for contempt for one reason: the lack of verification.  Under Iowa Code section 665.6, a person who initiates a contempt action based on conduct committed outside the court's presence must file "an affidavit showing the nature of the transaction."  An affidavit is a written

---

[5] Justin cites five contempt applications filed between February 5 and June 22, 2020.  We consider none of them on appeal because they are not part of the record concerning the January 8 decree or the February 4 order.  *See In re Marriage of Muelhaupt*, 439 N.W.2d 656, 663 (Iowa 1989) (instructing appellate courts to "give no consideration to posttrial events which a party might attempt to add to the record").

statement of facts verified under oath or affirmation by a person authorized by law to administer oaths, such as a notary public. *Callenius v. Blair*, 309 N.W.2d 415, 417 (Iowa 1981) (citing Black's Law Dictionary 54 (5th ed. 1979)), *overruled on other grounds by Phillips v. Iowa Dist. Ct. for Johnson Cty.*, 380 N.W.2d 706 (Iowa 1986).

Because Justin failed to attach an affidavit when seeking the contempt action, the district court did not abuse its discretion in refusing to consider his motion. And without a contempt finding, the denial of sanctions was also proper. Discerning no abuse in the court's decision, we affirm.

### III. Appellate Attorney Fees

Both Terri and Justin ask for appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *McDermott*, 827 N.W.2d at 687. In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request needs to defend the district court's decision on appeal. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Although Terri was obligated to defend the matter on appeal, Justin is not in a better position to pay her attorney fees. We assess the costs to Justin.

**AFFIRMED.**